620 A.2d 1226

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Sampson BRINKLEY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1992.

Filed March 1, 1993.

William E. Ruane, Radnar, for appellant.

William R. Toal, III, Asst. Dist. Atty., Havertown, for Com., appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

POPOVICH, Judge:

We are asked to review the judgment of sentence (3 to 6 years imprisonment) for possession with intent to deliver a controlled substance (cocaine) by the appellant, Sampson Brinkley. We affirm.

The first issue we address relates to a claimed error on the part of the court below in denying the appellant's motion to suppress. In reviewing such a claim, we must consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline*, 468 Pa. 265, 280–82, 361 A.2d 282, 290 (1970). If the record supports the factual findings of the suppression court, as well as the legitimacy of the inferences and legal conclusions drawn from those findings, they may not

be disturbed on appeal. *Commonwealth v. O'Bryant,* 479 Pa. 534, 537, 388 A.2d 1059, 1061, *cert. denied,* 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978). "It is, however, exclusively the province of the suppression court to determine the credibility of witnesses and the weight to be accorded to their testimony." *Commonwealth v. Neely,* 298 Pa.Super. 328, 341, 444 A.2d 1199, 1205 (1982).

Consistent with the preceding, our review of the evidence establishes that at approximately 10:00 a.m. on March 2, 1991, the City of Chester police department was conducting a surveillance of Tenth and Upland Streets, an area known for cocaine sales. Sergeant Finnegan, as part of the team, was stationed on Upland Street with binoculars in hand and strategically situated to be able to observe Rose, Eleventh and Tenth streets, the last of which had the most activity and "very well known ... for the sales of cocaine."

Sergeant Finnegan observed the appellant standing on the corner of Tenth and Upland wearing a brown leather jacket and white shirt. The sergeant "believed" the appellant possessed a bag of cocaine. This was premised upon the appellant holding a plastic bag containing a white substance. The bag was in the appellant's hand, and he was looking at it at eye-level. This information was transmitted by radio to other officers in the vicinity, Officer Dennis McIntyre and Sergeant Wendell Butler.

Officer McIntyre, a fifteen-year veteran of the police force, was seated in an unmarked vehicle situated in the 900 block of Potter Street with a clear view of the Tenth Street intersection. Within fifteen minutes of the broadcast, Officer McIntyre saw the appellant turn the corner at Tenth Street at a fast rate, walking toward the officer.

While the appellant was walking, Officer McIntyre saw him turn three times and look over his shoulder. With the last glance behind him, the appellant grabbed an object from his right side and brought it across his chest and placed it inside the left, breast pocket of his jacket. During these movements, Officer McIntyre noticed a large bag of white powder in the palm of the appellant's hand. Also, from the witness' knowl-

edge of narcotics, he testified that individuals in possession of drugs "usually hold the ... bag up ... and ... pluck it to check the weight or the quality....", just as Sergeant Finnegan had described the appellant's behavior.

When Officer McIntyre was asked what prompted him to believe that the appellant was in possession of narcotics, he stated that suspicion arose from the appellant walking at such a fast pace and looking over his shoulder repeatedly. And, when a Ford Bronco undercover vehicle driven by Sergeant Butler and Officer Sendek crossed Potter Street, the appellant, at a distance of no more than twenty feet from Officer McIntyre, was observed moving a "white package" from his right side into his inside left, breast jacket pocket. At this point, Officer McIntyre believed the white object to be a controlled substance.[1]

■ Because Officer McIntyre was facing the opposite direction (on a one-way street) from where the appellant was walking, he asked Sergeant Butler and Officer Sender to apprehend the appellant. The two stopped the appellant,[2] identified themselves, advised him they suspected he was in possession of drugs and patted him down for protection purposes.

During the pat-down of the appellant, Sergeant Butler "felt [a lumpy type] bulge in the left pocket", which he suspected was a controlled substance. Once the object was removed— two and one-half bags containing small, individual bags of

1. Officer McIntyre had made "dozens" of arrests for Act 64 (drug) violations involving cocaine. Also, the officer had on "hundreds of occasions" the opportunity to see cocaine packaged, sold and distributed in the City of Chester.

2. This was effectuated on the strength of Sergeant Finnegan having seen the appellant displaying a white object believed to be a controlled substance and Officer McIntyre witnessing the appellant placing a white, plastic object into the inside of his jacket pocket. From the cumulative effect of these observations, we find that probable cause materialized to permit Sergeant Butler and Officer Sendek to arrest and, incident thereto, search the appellant. Cf. *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (Police officers aiding other officers in executing arrest warrants are entitled to assume that officers requesting aid offered magistrate information requisite to support independent judicial assessment of probable cause).

white rock and powder—it was field-tested and found to be cocaine. The appellant was charged and found guilty of possession with intent to deliver a controlled substance. Post-trial motions were denied and the appellant was sentenced. This appeal was perfected and challenges the denial of the motion to suppress and the sufficiency of the evidence.

As for the suppression issue:

It is axiomatic that the validity of a warrantless arrest is determined by considering "whether, at the moment the arrest was made, the officer had probable cause to make it," *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and the person arrested is believed to be the guilty party. See *Commonwealth v. Walker*, 348 Pa.Super. 207, 501 A.2d 1143 (1985), allocatur denied; *Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640, 644 (1980). It is only the probability of criminal activity that is the standard of probable cause. This means less than the evidence which would justify conviction, or even a *prima facie* showing of criminal activity; but more than a mere suspicion. See *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970). Specifically, we have stated:

Probable cause is a flexible, commonsense standard. As the Supreme Court in *Texas v. Brown*, supra [460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ] commented [460 U.S. at 741] 103 S.Ct. at 1543:

It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 [93 L.Ed. 1879] (1949).

Moreover, when examining a particular situation to determine if probable cause exists, a court must consider

all factors and not concentrate on any individual element. Furthermore, it is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might. Finally, probable cause does not deal in certainties; rather, a court is faced with the factual and practical consideration of everyday life which affect how reasonable and prudent men act. See *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701, 705 (1982); *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

*Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923, 927 (1985). Accord *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987).

*Commonwealth v. Mallory*, 418 Pa.Super. 614, 614 A.2d 1174, 1176 (1992).

Examined in view of the remarks in *Mallory*, supra, we find the evidence to be consistent with the suppression court's ruling; namely:

1) Tenth and Upland Streets were "notorious" areas for cocaine sales;

2) Three to four drug arrests had been made earlier the same day in the area where the apprehension and arrest of the appellant took place;

3) Appellant was observed on the most active corner of Chester, Pennsylvania (Tenth Street) holding at eye level a plastic bag believed to contain cocaine by an eighteen-year veteran of the police force, five years of which were spent in narcotics;

4) Within fifteen minutes of the first sighting of the appellant, he was observed walking at a fast pace, repeatedly looking over his shoulder while walking away from Tenth and Upland Streets;

5) Officer McIntyre witnessed the appellant moving a large, white plastic package from his right side to the left inside portion of his jacket; and

6) Officer McIntyre, a fifteen-year veteran of the police department, who had observed hundreds of packages containing cocaine and participated in dozens of cocaine arrests, believed the appellant to be in possession of cocaine.

Sergeant Butler, being privy to all of the aforesaid as a result of participating in a joint surveillance to apprehend purchasers and dealers of drugs, was entitled to rely on the predicate for Sergeant Finnegan's and Officer McIntyre's belief that the appellant was in possession of drugs so as to justify the warrantless search of his person and the seizure of the drugs contained inside his jacket. Cf. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

This issue is a close one, but we believe that the totality of the circumstances point to sufficient probable cause to link the clear plastic bag (containing a white substance) with criminal activity. We stated as much in this Court's recent decision of *Mallory*, supra. Although *Mallory* does not deal with the cumulative effect of sightings of several officers and their impact upon a recipient of the information as a basis for an arrest, we find that the precepts recounted therein, as to warrantless arrests, are germane to the ultimate disposition of the case at bar. Accordingly, we are not persuaded to overrule the suppression court's order denying the appellant his motion to invalidate the police officers' actions and evidence seized as a result thereof. *Id.; Whiteley,* supra.

■ Lastly, we will respond to the claim of the appellant that the evidence was insufficient to establish guilt for possession with intent to deliver a controlled substance. We have examined the evidence, in a light most favorable to the verdict-winner and availing the Commonwealth all favorable inferences to be drawn therefrom, and hold, in quantity and quality, that the evidence is sufficient to sustain the appellant's conviction and judgment of sentence.[3]

Judgment of sentence affirmed.

**3.** We would note that the appellant's version of the events depicted him as finding the drugs on the street on the day, time and place in

question. The police's version being to the contrary, it was for the trier-of-fact to weigh the evidence and make credibility determinations. We may not invade this bailiwick, especially where the facts are supportive of the verdict. Such being the case, we will not disturb the judgment of sentence.